CURTIS P. HOLDSWORTH (SBN 174080)
choldsworth@hhlawfirm.com
JEFFREY L. SIKKEMA (SBN 164367)
jsikkena@hhlawfirm.com
**HOLDSWORTH & HAGOPIAN**
A Professional Corporation
600 Anton Boulevard, Suite 1075
Costa Mesa, CA 92626
Telephone: (714) 384-4120
Facsimile: (714) 384-4121

Attorneys for Plaintiff YTY Industry SDB.BHD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| YTY INDUSTRY SDN.BHD., a Malaysian Corporation,<br><br>                              Plaintiff,<br><br>vs.<br><br>THE DOW CHEMICAL COMPANY, a Delaware Corporation, and DOES 1-50, inclusive,<br><br>                              Defendants. | CASE NO. CV 05-8881 SGL (AJWx)<br><br>**DECLARATION OF JOEL MARK IN OPPOSITION TO DOW'S MOTION FOR ATTORNEYS' FEES**<br><br>DATE:       December 21, 2009<br>TIME:       10:00 A.M.<br>CTRM:      1 |

I, JOEL MARK, declare:

1.     I have been asked by counsel for Plaintiff YTY Industry SDN.BHD. ("YTY") to opine on a number of the issues raised by The Dow Chemical Company's ("Dow") Motion for Attorneys' Fees in the above-captioned action ("Instant Motion"). For the reasons articulated more specifically below, I have a strong disagreement with Dow's expert, Mr. James E. King, regarding his conclusions relative to the Instant Motion.

///

## SUMMARY OF OPINIONS

2.    Assuming the Court were to rule that California and not Michigan law applies to the determination of the Instant Motion, and assuming that the Court was satisfied that at least some portion of the overall litigation did involve some action for "collection" under the Sales Contract (two issues I understand are disputed by YTY but upon which I have not been asked to opine), I believe that a fair allocation can be made between attorneys' fees incurred by Dow related to defending the claims under the Sales Contract and attorneys' fees incurred by Dow defending all the other claims at issue in the action.  And, I also believe that a fair allocation of the attorneys' fees to which Dow then might be entitled for defending claims under the Sales Contract should be no more than $278,245.95, if that, and it is more appropriate for the actual amount to be substantially less.

## QUALIFICATIONS

3.    I have been an attorney licensed to practice before the Courts of the State of California since 1972.  I also am admitted to practice before all of the United States District Courts in California, the Ninth Circuit Court of Appeals, the Federal Circuit Court of Appeals, and the United States Supreme Court.  I also was admitted to practice in the State of Colorado, although that admission status has been inactive for several years.

4.    Since my initial admission in California, my practice has been exclusively business litigation.  Attached hereto as Exhibit A is a copy of my current Resume.  Significant qualifications relative to this case include that, for the first 15 years of my career, I spent a significant amount of my practice representing attorneys in malpractice actions.  As a result, I became involved in the California then-volunteer State Bar disciplinary process as a Referee hearing disciplinary matters and mandatory arbitration of attorney-client fee disputes.  In 1993, I was appointed to the State Bar Committee on Mandatory Fee Arbitration, where I served until 1997 and during which year I Chaired the Committee.  In 2002, I was

re-appointed to the Committee on Mandatory Fee Arbitration, and served on it until 2008 when again I Chaired the Committee. In 2009, I was appointed by the State Bar Board of Governors as the State Bar Mandatory Fee Arbitration Presiding Arbitrator, and I was recently re-appointed to another annual term as Presiding Arbitrator for 2010. I also have served on the Mandatory Fee Arbitration panels for the State Bar Mandatory Fee Arbitration Program, and for the Los Angeles, Santa Monica and Ventura County local programs. I have been the sole arbitrator or panel chair in hundreds of fee arbitrations administered by the State Bar and local programs. In addition, I have been selected by parties to American Arbitration Association arbitration agreements to be an arbitrator in approximately ten matters where the dispute was over attorneys' fees.

5.    In addition to my State Bar service on the Committee on Mandatory Fee Arbitration, I was appointed by the State Bar Board of Governors to serve on the State Bar Committee on Professional Responsibility and Conduct for the last two years of a three-year term that had become vacant. My two years of service was from 2000 to 2002.

6.    As part of my service on the Committee on Mandatory Fee Arbitration, I have written the lesson plan that is currently used to provide basic training to arbitrators, and I am serving on the sub-committee currently revising that lesson plan. I also was an active participant in the creation of the advanced fee arbitrator training lesson plan, the training undergone by Mr. King as mentioned in his Declaration. I have been a panelist in numerous arbitrator trainings and have trained thousands of arbitrators. I participated in the revision of the State Bar's approved fee agreement forms on three separate occasions. I have been the principal author on nine of the Committee's 34 Arbitration Advisories issued since 1993, and I have been a significant contributor to many others. I have personally written approximately 7 of the Committee's program advisories – advisories to program administrators on points of procedure involving fee arbitrations.

7.    I have served as an expert witness or consultant in 32 matters in addition to this case.  A list of those matters is attached hereto as Exhibit B.  In 17 of those matters, I was retained to provide consultation or opinions, or otherwise deal with issues, regarding attorneys' fees.  I have qualified as an expert and had my expert testimony admitted by the court or in arbitration, either by direct testimony, declaration or deposition testimony admitted by stipulation, eight times.  And, on one occasion, I was retained directly by a Commissioner the Los Angeles Superior Court to provide the court with consulting services in connection with its ruling on a multi-million dollar fee application by a receiver and his counsel.

8.    Since 1993, I have been a sole presenter or panelist in over 70 continuing legal education presentations.  A list of such presentations is attached hereto as Exhibit C.  Over 40 of these presentations have involved attorneys' fees issues, and many have been before attorneys at the California State Bar Convention, the State Bar Section Education Institute and the National Association for Legal Fee Analysis.

9.    I have been Martindale-Hubbell rated AV for many years, and I have been named as a Southern California "Super Lawyer" for several years now.

## TASKS PERFORMED

10.    I was contacted some time prior to November 18, 2009 by Curtis Holdsworth, Esq., who explained to the nature and scope of the issues raised by the Instant Motion and enquired about my availability to serve as an expert witness in this matter.  On November 18, 2009, Mr. Holdsworth sent to me the Declaration of James E. King for my review.  After my initial review of the King Declaration, we spoke in detail regarding the nature and scope of the potential assignment.  It is my practice to speak with retaining counsel in this way, as it is my practice not to accept any engagement where I do not feel that I can give truthful testimony that also is consistent with what appear to me to be counsel's expectations. After I satisfied myself that I could testify truthfully regarding the matter, assuming certain

1  of Mr. Holdsworth's representations were substantiated by the documentation he
2  said he would be providing to me, I agreed to accept the assignment.

3      11.    Thereafter, Mr. Holdsworth provided me with Dow's Motion for
4  Attorneys' Fees, the supporting Declarations, and all of the Exhibits to these
5  documents.  In addition, Mr. Holdsworth has provided me with Dow's Answer to
6  Plaintiff's First Amended Complaint and the Court's July 2, 2007 Order granting
7  Dow's motion to dismiss plaintiff's Fourth and Fifth Claims.  In addition, Mr.
8  Holdsworth has provided me with a draft of YTY's opposition to the Instant
9  Motion.    I have reviewed all of the documentation provided to me by Mr.
10 Holdsworth, including conducting a detailed audit of the Paul Hastings' billing
11 statements submitted in support of the Instant Motion, which audit lasted over
12 seven hours.

13     12.    In addition, I personally have performed the legal research upon which
14 my opinions and conclusions have been in part based, with the exception that my
15 review of the draft opposition has been helpful in supplying additional legal
16 research that I did not have the time to perform in detail myself.

17     13.    I have prepared this Declaration entirely on my own, with the
18 exception of some minor, non-substantive edits suggested by Mr. Holdsworth, and
19 it contains all the opinions and conclusions I have reached in this matter as a result
20 of my own investigation and study.

21                  **OPINIONS AND CONCLUSIONS**

22 **Scope of My Opinions and Conclusions**

23     14.    I understand that there is an issue regarding whether Michigan or
24 California law applies to the questions raised in the Instant Motion, and that the
25 application of Michigan law may be a sufficient ground upon which to conclude
26 that no attorneys' fees are recoverable by Dow.

27     15.    In addition, the one contract at issue with an attorneys' fees provision,
28 the Sales Contract, has a very limited scope.    It provides that such fees are

1  recoverable only in an action seeking "collection" of money due under the contract.
2  As I understand the nature of this action based upon the materials I have reviewed,
3  no claim ever was asserted by any party seeking "collection" under that contract.
4  As such, it also would appear, based upon my own research (e.g., *Kim v. Kang* 154
5  F.3d 996 (9th Cir. 1998)), and the authorities cited in YTY's opposition to the
6  Instant Motion, that the attorneys' fees provision of the Sales Contract does not
7  support any recovery of attorneys' fees by Dow.

8      16.    As a result, my analysis is limited to considering the questions raised
9  by the Instant Motion in the event that the Court may rule that California law
10  applies and also may rule that some portion of the this case was or constituted an
11  action under the Sales Contract.

12  **Criticisms of Mr. King's Conclusions**

13      17.    Under California law, where multiple claims are litigated, including a
14  contract claim with a narrowly drawn attorneys' fees provision, attorneys' fees may
15  be allowed if incurred in connection with litigation of the contract claim(s) only,
16  but not as to any tort claims and not as to claims on other contracts without
17  attorneys' fees clauses.  See *Exxess Electronixx v. Heger Realty Corp.* (1998) 64
18  Cal.App.4[th] 698, 708-713; see also *Santisas v. Goodin* (1998) 17 Cal.4[th] 599, 622.

19      18.    In addition, where such multiple claims are litigated, the court must
20  apportion the fees incurred and only award the fees that were incurred specifically
21  in litigating the contract claim, unless the moving party establishes that the various
22  claims are inextricably intertwined to the point where they raise "common issues
23  requiring virtually identical evidence."  See *Erickson v. R.E.M. Concepts, Inc.*
24  (2005) 126 Cal.App.4[th] 1073, 1085.

25      19.    Here, only the Sales Contract contained an attorneys' fee clause, and it
26  was an extremely narrow one.  The rest of the issues litigated in this case were
27  unrelated to any action for "collection" under the Sales Contract.  Moreover, the
28  claims under the Sales Contract at most appeared at most to be a "tail wagging the

1  dog" that were in no way "inextricably intertwined" with the main thrust of the
2  action which was damages for fraud.  Indeed, the only rescission claim was the last
3  claim in both complaints, and in both complaints rescission was limited on their
4  face to the Acquisition Agreement only.   It also appeared to me that the proof
5  required for the litigation of the only two claims that even arguably were pursued
6  under the Sales Contract was not "identical" to the extensive proof required to
7  litigate all the other claims at issue in the case.

8      20.    Thus, the one issue at the very center of the Instant Motion is the issue
9  of a fair allocation of the attorneys' fees incurred by Dow in its defense of the
10  claims under the Sales Contract and in its defense of all of the other claims.  As
11  such, one would have expected Mr. King to have addressed this central issue and to
12  have made an independent analysis of the billing statements to aid the Court in
13  making a fair allocation between the one claim under the Sales Contract and all the
14  other claims.

15      21.    In his Declaration, however, Mr. King fails entirely to address the
16  issue of allocation.  He concludes that, relative to the overall action, the fees
17  incurred by Dow are reasonable.  But, he makes no conclusion about which fees
18  were incurred relative to the claims specifically under the Sales Contract.  He
19  testifies that he was given unfettered access to the Paul Hastings files, so he
20  certainly had an opportunity to make an informed decision regarding allocation.
21  What he states, however, is only that Mr. Morrow made such an allocation and that
22  Mr. King has accepted it in full without any independent critical examination.  King
23  Declaration, p. 3, ll. 9-13.

24      22.    In addition, Mr. Morrow's Declaration does not recite any special
25  expertise that Mr. Morrow may have regarding the issue of allocation of the
26  attorneys' fees as between the claims under the Sales Contract and all the other
27  claims.  Also, Mr. Morrow is an advocate for his client, Dow.  When Mr. King
28  simply accepts Mr. Morrow's advocacy, he does not do so as an independent expert

1  (at least not on that central issue).  Accordingly, as to the one issue at the center of

2  the Instant Motion, there is no expert testimony whatsoever in support of the Instant

3  Motion – not from Mr. King, Dow's designated expert, and not from Mr. Morrow,

4  who has claimed no such expertise.

5      23.    One may conclude that the only reason that Dow did not have Mr.

6  King make such an independent assessment of the allocation issue based upon his

7  "unfettered" access to the Paul Hastings files is that such an allocation would have

8  drastically reduced the amount that Dow could claim limited to the two claims

9  arguably based upon the Sales Contract.

10 **Criticisms of the Support for the Instant Motion**

11     24.    Mr. Morrow's input is no more illuminating.  First, as noted above, he

12 is an advocate and not an independent investigator, and his Declaration recites no

13 expertise on the issue of allocation.   Accordingly, one must presume that his

14 allocation was performed from an advocate's perspective.

15     25.    Second, Mr. Morrow has not provided the same "unfettered" access to

16 his files as he provided to Mr. King to either YTY's counsel, YTY's expert, or to

17 this Court.

18     26.    Third, Mr. Morrow has redacted literally hundreds of time entries

19 aggregating over $774,000 in value, making it impossible to determine to which

20 issue the described task related.  Most of these redactions appeared unnecessary.

21 As an example, there is a redacted entry on May 4, 2006 where the content of a

22 certain set of interrogatories is redacted although that set of interrogatories had

23 been propounded to the other side.  This extensive phenomenon leads to the strong

24 possibility that at least one purpose of this extensive redaction was obfuscation of

25 the allocation issue.

26     27.    Fourth, as to the other time entries, they are so generally stated that it

27 cannot be determined to which issue they related.  In fact, after reviewing all time

28 entries between the inception of the case and the granting of the motion for

1  summary judgment, I found only four entries where it could be stated definitely that
2  the task related to the Sales Contract at all (October 26, 2006 ["Review documents
3  regarding PUD shipments to YTY (2.0)"]; November 11, 2006 ["Perform search in
4  CaseData database for invoices, purchase orders, and other documents relating to
5  sale/shipping of PUD to YTY (.50):]; February 6, 2007 ["Legal research xxxxxxx
6  xxxxxxxxxx UCC"]; and, September 18, 2007 ["Prepare response to YTY's second
7  set of interrogatories, including schedules of Dow's PUD production (1.00)"]).
8  Moreover, out of the 572 tasks described in Mr. Morrow's narrative summary of
9  activities (Morrow Declaration, Exhibit 6), I could only identify perhaps ten entries
10 that even arguably were directed to the claims under the Sales Contract.

11     28.    It also seemed evident that Mr. Morrow made no attempt to give an
12 estimate of an allocation of the extensive quantity of tasks that were generally
13 described (such as "discovery responses," "team meeting," "review Complaint,"
14 etc.) between the claims based directly upon the Sales Contract and all the other
15 claims, despite Paul Hastings' presumed superior knowledge regarding such a
16 reasonable allocation of these activities.  Rather it appears that Mr. Morrow's
17 methodology was to exclude the very few time entries where but for the redactions
18 it might have been evident on their face that they had no relationship whatsoever to
19 the two claims directly involving the Sales Contract, and included all the rest that
20 were not specific enough for anyone to definitely conclude one way or the other
21 from the description alone that the tasks related other issues and claims.  Clearly,
22 many of these general tasks had to have been devoted at least in part, if not in
23 overwhelming part, to litigation of the other claims wholly unrelated to the issues
24 necessary to the litigation of the two claims that arguably related directly to the
25 Sales Contract.   However, Mr. Morrow claimed 100% of these tasks in his
26 Declaration in support of the Instant Motion.

27     29.    Another anomaly regarding the Paul Hastings billing statements was
28 that the "attorney summary" page was omitted on at least a dozen statements (see

Exhibit 21, pp. 325-326, 393-394, 404-405, 447-448, 453-454, 520-521, 617-618, 671-672, 688-689, 702-703, 744-745 and 803-804, each set of cited pages demonstrating that a page between each set had been omitted). At first, these missing pages were considered an annoyance, as without them it was impossible to know at what rate each timekeeper had been charged during that billing period. But, the frequency with which these omissions occurred, and the lack of any significant number of omissions of any other pages, strongly indicated that they had been omitted intentionally. I could think of no reason to intentionally omit them except if they contained entries or other information that was not helpful to Dow's position.

30. There were some additional anomalies in the Paul Hastings billing statements that, although I have not attempted to quantify how much they may have increased the overall billing, cast further doubt upon the reliability of the conclusions provided by Mr. Morrow:

A. First, for some period of time commencing at the outset of the representation the firm practice appeared to be the uniform billing of time in minimum increments of .25 of an hour. Such minimum increments can be indicia of bill padding and can increase the overall bill unfairly. See, Committee on Mandatory Fee Arbitration Arbitration Advisory 03-01 ("Detecting Attorney Bill Padding").

B. Second, although Paul Hastings changed that practice in approximately April 2007 (apparently beginning to bill in minimum increments of .1 of an hour), many timekeepers continued to bill in increments of .25 of an hour. And, where they did, the accounting system automatically rounded up to .3. This continued from April 2007 until at least September 2008, and I found at least two dozen times where it occurred.

C.    Third, the general nature of the description of the tasks performed also was a subject of criticism in Arbitration Advisory 03-01.

D.    Fourth, I compared the time entries for timekeepers attending the same meeting or telephone conference using 25 examples. In only a few were the time entries consistent, and in a number of these examples, Mr. Morrow's time entry was the one in the larger amount.

E.    Fifth, for some unknown reason, commencing with the May 29, 2008 billing statement, Paul Hastings added 1¢ to each timekeeper's rate. Thus, instead of being charged at $775.00, from and after that date Mr. Morrow's time, for instance, was charged at $775.01. Due to the format of the bills, however, it was impossible to determine if the extra 1¢ was included in the total billing or, if it was, by how much it may have increased the total amount.

31.    Thus, despite Mr. King's willingness to simply accept Mr. Morrow's allocation, Mr. Morrow's role as an advocate for Dow, Paul Hastings' non-specific description of tasks, its redaction of substantive information where it had appeared and the other anomalies found in the Paul Hastings billing statements, I cannot simply accept an advocate's allocation at face value, and neither must this Court.

**My Opinions and Conclusions Regarding a Fair Allocation**

32.    Assuming any attorneys' fees are awardable at all, which as noted above I understand is disputed by YTY on a number of bases (and upon which I have not been asked to opine), my analysis of the allocation issue is that a fair allocation can be made in this case, as follows:

33.    First, the two claims that were the only claims that even arguably directly related to the Sales Contract were removed from this case when summary judgment was granted in August 2008. At and after that date, the only claim even

1  arguably on a contract at all was the Tenth Claim. And, on its face, that claim
2  sought rescission of the Acquisition Agreement only. Further, it is my
3  understanding that this Court ruled that each contract had to stand or fall on its own
4  merits. And, in all events, as Dow had acted to terminate the Sales Contract in
5  2005, any claim to rescind it after that date would have been moot in all events. In
6  addition, I am informed that the Court also required YTY to make an election
7  between fraud and rescission, and it elected to proceed solely on the Tenth Claim,
8  which is for rescission of the Acquisition Agreement.

9      34.    Accordingly, from and after the granting of summary judgment in
10 August 2008 as to the two claims that had been asserted under the Sales Contract,
11 that "tail" was no longer even capable of "wagging the dog" at all and, as a result,
12 no defense activity after that date may be found to be "inextricably intertwined"
13 with the claims directly under the Sales Contract or in any way related to the
14 "identical evidence" as might have been relevant to the claims under the Sales
15 Contract.

16     35.    Dow is claiming $1,709,120.20 in fees and expenses incurred after the
17 granting of summary judgment. Since no claim "on the contract" was being made
18 after that date on the Sales Contract, at the outset of the allocation all the fees and
19 expenses incurred after August 2008 should not be allowed.

20     36.    Second, as noted above, time entries with an aggregate value of
21 $774,130 were redacted, making it impossible to conclude that any of these entries
22 were in any way related to the claim under the Sales Contract. These redacted
23 entries also should not be allowed due to their lack of specificity and thus lack of
24 credibility.

25     37.    Third, as also noted above, the remaining time entries were so generic
26 as to their relationship to specific claims that some other basis must be employed to
27 reach a fair allocation. From my reading of the parties' description of the case and
28 my review of the pleadings I have been provided, it appears that the claims

1  arguably brought under the Sales Contract were very minor compared with the
2  thrust of the overall litigation.  Certainly, the large damages claims that Paul
3  Hastings asserts caused it the bulk of its defense activities did not arise out of any
4  claim under the Sales Contract.  Accordingly, at most, only two of the ten claims
5  asserted had any direct relationship to the to the Sales Contract, and as such, a fair
6  allocation would be to award no more than 20% of the remaining fees claimed to
7  Dow as a result of the attorneys' fees clause in the relatively minor Sales Contract.
8  And, even this percentage is extremely generous as the two contract claims in the
9  case involved all three contracts – the Sales Contract and two others with no
10 attorneys' fees clause.

11      38.    Dow seeks reimbursement for fees and expenses in the total amount of
12 $3,875,079.91.  The $1,709,120.20 after the claims directly based upon the Sales
13 Contract were removed from the action should be deducted from the claimed
14 amount.  In addition, the redacted time entries before summary judgment on the
15 contract claims was granted, totaling $774,130 in the aggregate also should be
16 deducted due to their lack of specificity and thus lack of unreliability.  Finally, I do
17 not believe from my reading of their moving papers that Dow has proved that all
18 the other claims were "inextricably intertwined" with the claims under the Sales
19 Contract or that they involved "identical evidence."  In addition, Paul Hastings has
20 not provided any objective way to make a more specific allocation due to the
21 generalized nature of the vast majority of their time entries and their redaction of
22 the remaining time entries.  Accordingly, as the claims directly related to the Sales
23 Contract were at most no more than 20% of the overall claims asserted, if that – and
24 arguably quite a bit less considering that the Sales Contract was only one of three
25 contracts raised in those claims – then it would be extremely unfair to award Dow
26 any more than 20% of the remaining claimed fees and expenses and more
27 reasonable to award an even lesser sum.

28 ///

39.     As a result, a fair allocation of fees and expenses incurred by Dow in litigation the claims presented in this case "on the contract" directly related to the Sales Contract should be no more than $278,245.95, calculated as follows:

$3,875,079.91

- 1,709,120.20

-   774,130.00

$1,391,229.71

x  20%

$  278,245.95

40.     And, as noted above, since the Sales Contract was just one of three contracts litigated in the two contract claims, the most fair allocation would be substantially less than that amount.

## CONCLUSION

41.     Accordingly, assuming the Court were to rule that California and not Michigan law applied, and assuming that the Court were satisfied that at least some portion of the overall litigation did involve some action for "collection" under the Sales Contract, I believe that a fair allocation can be made between attorneys' fees incurred by Dow related to defending claims under the Sales Contract and attorneys' fees incurred by Dow defending all of the other claims at issue throughout this action.  And, I also believe that a fair allocation of the attorneys' fees to which Dow then might be entitled for defending claims under the Sales Contract should be no more than $278,245.95, if that, and it is more appropriate for the actual amount to be substantially less.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4ᵗʰ day of December, 2009, at Oxnard, California.

JOEL MARK

# EXHIBIT A



## JOEL MARK

### Professional Experience:

**NORDMAN CORMANY HAIR & COMPTON LLP**, 2000 to present.
> 1000 Town Center Drive, Sixth Floor
> Oxnard, California 93030-1132
> Telephone:  (805) 988-8300
> Facsimile:  (805) 988-7700
> E-mail:      jmark@nchc.com

**RUSS, AUGUST, KABAT & KENT**, Los Angeles, California, 1998 to 2000.

**PLOTKIN, MARUTANI & KYRIACOU**, Los Angeles, California, 1993 to 1998.

**BAKER & McKENZIE**, Los Angeles, California (formerly Macdonald, Halsted & Laybourne), 1973 to 1993.

### Litigation Experience:

Mr. Mark has concentrated in trial practice and complex business litigation, including class action matters. With over thirty-six years of experience, Mr. Mark has handled a wide range of business litigation matters including trademark, trade secret and competitive business practice cases, shareholder dissolution and valuation actions, director and officer liability matters, real estate disputes, general contract and business disputes, banking litigation, and insurance coverage disputes. Mr. Mark has handled over one hundred securities and broker/dealer cases and has represented over eighty attorneys and accountants in malpractice and malicious prosecution cases. Mr. Mark has had in excess of twenty-five trials to verdict or other dispositive judgment, including numerous jury trials. Mr. Mark has handled numerous major arbitration matters before



EXHIBIT _____ A_____

15

arbitration forums such as the American Arbitration Association and the International Chamber of Commerce Court of Arbitration.  Mr. Mark serves as a commercial and securities arbitrator for the American Arbitration Association (Panel Chair Training 1993; Panel Training and Certification 1999) and the Ventura County Superior Court panel of arbitrators, and formerly served on the panel of the National Association of Securities Dealers.  Mr. Mark is a Senior Partner with Nordman Cormany Hair & Compton LLP, and currently serves as Chair of the Firm's Litigation Department.

Mr. Mark also has lectured on and has served as an expert witness concerning legal ethics and litigation practice and procedure and attorneys' fees issues.  As a member of the California State Bar Committee on Mandatory Fee Arbitration (Member 1993-1997, 2002-2008; Chair 1997 and 2008; Presiding Arbitrator 2009-    ), Mr. Mark wrote the lesson plan for and moderated over twenty arbitrator training sessions and has presented numerous Section Education Institute, State Bar, CEB and other provider programs regarding attorneys' fees, ethics issues and litigation skills.  Mr. Mark was the lead editor for the 1997 edition of the State Bar Form Attorneys' Fee Agreements publication, and participated in the update of the document in 2004 and 2005.  Mr. Mark also has served on the State Bar Committee on Professional Responsibility and Conduct (2000-2002).

**Appellate Cases:**

McConnell v. Merrill Lynch, 21 Cal.3d 365 and 33 Cal.3d 816; Merrill Lynch v. Livingston, 566 F.2d 1119; AIG v. AIB (9th Cir. 1991) 926 F.2d 829; Oprian v. Goldrich/Kest, 220 Cal.App.3d 337; Thomason v. Bateman, Eichler, 199 Cal.App.3d 1100 (decertified for publication); Forman v. Knapp Press, 173 Cal.App.3d 200; Acosta v. Kerrigan, 2005 WL 271625 (not certified for publication); Acosta v. Kerrigan, 150 Cal.App.4th 1124; Agrizap v. Woodstream, 520 F.3d 1337.

**Publications:**

Attorneys' Fees - Practically, Ethically (2002-    ); The Practical Ethical Rainmaker (2003 -    ); "CCP § 2019(d) -- Trade Secret Litigation's Risky Little Secret" ABTL Report, May 2000, Vol. XXII, No. 3; "The Anti-Competition Clause in the Legal Context" ABTL Report, September 1992, Vol. XV, No. 1: "Economic Conflicts -- A Fishy Proposition" ABTL Report, May 1993, Vol. XV, No. 3 [partial list].

**Admissions:**

State Bar of California, December 1972; United States Supreme Court; Ninth Circuit Court of Appeals; Federal Circuit Court of Appeals; United States District Courts, California, all Districts; State Bar of Colorado, August 1994 (currently inactive).

**Organizations:**

Los Angeles Association of Business Trial Lawyers (Charter Member; ABTL Report Editorial Board); Volunteer Referee, California State Bar Court (1984-1989); Member, California State Bar Standing Committee on Mandatory Fee Arbitration (1993-1997 and 2002-2008; Chair 1997 and 2008, Vice Chair 1996, 2005-2007; Presiding Arbitrator 2009-        ); California State Bar Committee on Professional Responsibility and Conduct (2000-2002); Los Angeles County Bar Association Dispute Resolution Services Fee Arbitration Executive Committee (1996-2003; Chair 1999-2001); Member, Panel of Arbitrators, American Arbitration Association (1984-        ); American Bar Association (Litigation, Dispute Resolution, Insurance and Commercial Sections); Los Angeles County Bar Association (Litigation, Alternate Dispute Resolution and Business Law Sections); Federal Bar Association (Los Angeles Chapter Board of Directors, 1992-2001); Santa Monica Bar Association (Mandatory Fee Arbitration Panel and Trainer, 1998-2001); Ventura County Bar Association (Board of Directors, 2006 -        ; Business Litigation Section 2004-        ); Mandatory Fee Arbitration Panel, Committee and Trainer, 2000-        ); Judicial Evaluation Committee 2009-        ); Ventura County Trial Lawyers Association (Secretary/Treasurer 2005, Vice President 2006, President and recipient of the CAOC Local Chapter President of the Year 2007); Jerome H. Berenson Inns of Court (Master, 2005 -        ); Association of Professional Responsibility Lawyers.

**Education:**

University Of California Hastings College Of Law (J.D., 1972)
University Of California At Berkeley (A.B., 1969)

**Personal:**

Born, April 21, 1947; Married (Leslie); Two children (Jessica, Joanna); American Youth Soccer Organization (National Board of Directors, 1998 – 2004; National Secretary, 1998; National Vice President, 1999; National President, 2000 – 2004; Chair of AYSO Audit Committee, 2006 -        ; AYSO Hall of Fame Inductee at National Soccer Hall of Fame, Oneonta, New York, 2008).

# EXHIBIT B

# JOEL MARK

## List of Expert Witness/Consultant Matters

1. *Shah v. Haddad* Los Angeles Superior Court Case No. BC 099426

   Provided testimony for an attorney regarding the propriety of a contingent fee contract. Deposition testimony was given on February 15, 1995, and it was read at trial pursuant to stipulation.

2. *Berger v. Rosen* Los Angeles Superior Court Case No. BC 132575

   Provided consulting services in an attorney malpractice matter adverse to the attorney in 1996. No deposition or trial testimony was given.

3. *Tchorbadjian v. Western Home Insurance Co.* Los Angeles Superior Court Case No. [unknown]

   Provided testimony adverse to an attorney in an attorney malpractice and fee dispute action. Deposition was given on November 8, 1996. No trial testimony was given.

4. *Bitmayl v. Steiner* Los Angeles Superior Court Case No. [unknown]

   Provided consulting services adverse to an attorney regarding a conflict of interest matter in 1997. No deposition or trial testimony was given.

5. *Employers Ins. Co. of Wausau v. Courteau* USDC, Central Dist. of California, Case No. CV 98-0614 WMB (Cwx)

   Provided an expert witness statement (F.R.Civ.P. Rule 26) on behalf of an attorney in a fee dispute on October 5, 1998. No deposition or trial testimony was given.

6. *K-Tel v. Deutch* Los Angeles Superior Court Case No. [unknown]

   Provided consulting services to telemarketing company adverse to an attorney regarding propriety of telemarketing services contract with attorney in 1999. No deposition or trial testimony was given.



EXHIBIT B

7. *Conkle & Olesten v. Rus, Miliband & Smith* Orange County Superior Court Case No. 00CC09852

Provided expert witness services for attorneys against other attorneys regarding a fee dispute between prior and current counsel in 2000. No deposition or trial testimony was given.

8. *Barton v. Cipolla* Ventura County Superior Court Case No. SC 033015

Provided consulting services and later became counsel of record for an attorney regarding the dissolution of his law partnership in 2001. No deposition or trial testimony was given.

9. *Gold v. DWT* Los Angeles Superior Court, Case No. BC226720

Provided expert witness services on behalf of an attorney regarding the propriety of an engagement letter. Expert witness declaration was filed with the Court on August 7, 2001. No deposition or trial testimony was given.

10. *Gerst v. Arias & Ozzello LLP, et al.*, Los Angeles Superior Court Case BC 281962

Provided expert witness services on behalf of attorney in attorney malpractice and fee dispute matter in 2002. No deposition or trial testimony was given.

11. *Paz v. Calypso Auto Group*, Ventura County Superior Court Case No. CIV 219723.

Provided expert witness services for adverse to an attorney in a fee dispute matter in 2003. No deposition or trial testimony was given.

12. *United National Bank v. Progressive Casualty Insurance, et al.*, Los Angeles Superior Court Case No. BC 294576

Provided expert witness services adverse to an attorney regarding trial practice issues arising out of action over payment on a banker's bond insurance policy in 2004  No deposition or trial testimony was given.

13.  *SDI Capital Recovery v. Daniels* JAMS Arbitration

Provided expert witness services adverse to an attorney regarding conflict of interest issues. Deposition testimony was given on July 16, 2004, after which the case settled.

14.  *California Housing Finance Agency v. Hanover/California Management and Accounting Center, Inc.* Orange County Superior Court Case No. 02CC10634

Provided expert witness services adverse to an attorney regarding conflict of interest and attorney malpractice issues. Deposition was given on July 22, 2004. Trial testimony was given on August 31, 2004. Jury returned a verdict against the attorney.

15.  *In re PCO Litigation* Los Angeles Superior Court Case No. 170575

Provided consulting services to the Superior Court of the County of Los Angeles regarding the propriety of fee applications filed by receivers and counsel in Court-supervised receiverships in 2004. First report filed with Court on August 16, 2004. The matter concluded with a fee award based upon the report.

16.  *Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen v. Lowenstein Sandler* Essex County (New Jersey) Superior Court Docket No. L-6327-00

Provided expert witness services on behalf of plaintiff attorneys adverse to former partners regarding ethical considerations surrounding law firm dissolution in 2004. Report was submitted in November 2008. Deposition testimony has been given in February 2009. Trial testimony was given for two days in April 2009, following which the matter settled confidentially on terms plaintiff's counsel described as "favorable to plaintiffs."

17.  *Gregory S. Bloom, et al v. David K. Hughes, et al* Ventura County Superior Court Case No. CIV 229306

Provided expert consulting services to plaintiff in legal malpractice action arising out of the litigation of an underlying partnership dissolution action in 2005. No deposition or trial testimony was given.

18.   *Lewis v. HWGA, LLC*, Orange County Superior Court Case No. 04CC05590

Provided expert witness services to defendant in claim by attorney for unpaid fees arising out of a civil litigation matter.  No deposition was taken.  Trial testimony was given in May 2005.  A verdict was returned in favor of the attorney.

19.   *Heritage Oak Partners v. Union Bank of California, N.A.*, Ventura County Superior Court Case No. SC 029944

Provided expert witness services to defendant in connection with a claim by plaintiff for indemnity and reimbursement of attorneys' fees arising out of a prior civil litigation matter in 2006.  The matter was settled following the delivery of expert witness reports.

20.   *Mr. Wheels, Inc., etc. v. Reza Kahjan, et al* Los Angeles County Superior Court Case No. BC 332783

Provided expert consulting services to plaintiff against attorney involving malpractice, ethics and attorneys' fees issues in 2007.  No deposition or trial testimony was given.

21.   *Dianne Dewey, etc., et al., v Investment Company of Santa Monica, et al* Los Angeles County Superior Court Case No. BC 315 197

Retained as an expert witness on behalf of client objecting to a former attorney's fees in an underlying litigation matter.  The matter was settled.  No deposition or trial testimony was given.

22.   *Lockheed, et al v. Pachulski, Stang, et al* JAMS arbitration.

Provided expert witness services to claimant in connection with a malpractice action and claim for refund of attorneys' fees against attorneys in JAMS arbitration arising out of a bankruptcy court litigation in which Lockheed suffered a $16.3 million judgment in 2007.  Deposition testimony was given in 2009.  Qualified as expert and arbitration testimony was given in 2009.  Claimant recovered all damages prayed for in award citing expert testimony numerous times.

23.   *Tatro Tekosky Sadwick LLP v. Green* Los Angeles County Superior.Court Case No. BC376122

Retained to provide expert witness services to defendant in connection with attorneys' action to recover attorneys' fees arising out of a family law litigation

matter in 2008. The matter settled after expert witnesses were designated. No deposition or trial testimony was given.

24. *Fish v. Bobarykin* Orange County Superior Court Case No. 07CC07941

Retained in 2008 to provide expert consulting and witness services on behalf of a major Southern California law firm in malpractice and fee litigation. Deposition will be given on October 30, 2008, after which the case settled on terms described as "favorable" to the law firm.

25. *City of West Covina v. Hassen Imports Partnership* Los Angeles County Superior Court Case No. KC048157

Retained in 2008 to provide expert witness testimony in opposition to a claim for attorneys' fees under Code of Civil Procedure section 425.16. Declaration filed with the Court on October 3, 2008. The report was accepted by the court on May 7, 2009 and resulted in a reduction of the ultimate fee award.

26. *Confidential*

Retained in 2008 to provide counsel to law firm in re-negotiating a fee agreement in connection with a real estate development and related litigation, including contingent and hourly fee components, security against client property and a success bonus. Contract successfully and ethically modified in 2009.

27. *In re the Conservatorship of Karl Bernstein* Ventura County Superior Court Case No. P076953

Retained in 2009 as consultant and then associated in as counsel in defense of a petition for an award of attorneys' fees against a removed conservator. Opposition brief filed with the Court on May 6, 2009. Motion was denied at hearing on May 18, 2009.

28. *Insurance Company of the West v. BICEP* Los Angeles County Superior Court Case No. BC289557

Retained in 2009 as consultant and expert witness on behalf of insurance company in dispute with insured regarding fees claimed by attorney retained by insured under reservation of rights. No deposition or trial testimony has been given to date.

29.   *Stephen J. Horn v. Nemecek and Cole* JAMS Arbitration

Retained in 2009 as a consultant and expert witness on behalf of an attorney suing his former attorney for malpractice in action brought against the attorney's former client and in defense of a fraud counterclaim by the former client. Deposition testimony was given on November 18, 2009. No trial testimony has been given to date.

30.   *The Consulting Group, Inc. v. O'Neal, et al* Orange County Superior Court Case No. 04 CC 12638

Retained in 2009 as an expert witness regarding the reasonableness of attorneys' fees incurred in connection with the defense of a corporate officer pursuant to Corporations Code section 317. Declaration was provided to the Superior Court in September 2009. No ruling has been made to date.

31.   *Mikaelian v. McCann* Santa Barbara Superior Court Case No. 1220401

Retained in 2009 as an expert consultant and possibly witness on behalf of client regarding the existence of an attorney-client relationship, the scope of services of the relationship, ethical duties arising out of the relationship and the standard of care in handling the representation. No deposition or trial testimony has been given to date.

32.   *City of South Pasadena v. Metropolitan Transportation Authority* Santa Barbara Superior Court Case No. 1305851

Retained in 2009 to provide expert witness testimony regarding the duties of candor and disclosure of litigation counsel. Declaration filed with the Court in November 2009. Declaration was accepted but the issue to which it was addressed was deemed by the court to be irrelevant to the final decision.

33.   *YTY Industry SDN.BHD v. The Dow Chemical Company* United States District Court Central District of California Case No. DV 05-8881 SGL (AJWx)

Retained in 2009 to provide an expert witness declaration regarding reasonable value of attorneys' fees following trial of an action involving contract with attorneys' fees clause. Declaration to be filed December 3, 2009.

# EXHIBIT C

## List of Joel Mark's Speaking Engagements
### (June 1993 to Present – Partial List)

1. Panelist, "Procedural Issues in Class Actions Following Corporate Disasters" Baker & McKenzie Corporate Disaster Seminar No. 1, Los Angeles, June 11, 1993.

2. Panelist, "Alternative Dispute Resolution -- Economic Alternative or Rough Justice?" Japan External Trade Organization Management Seminar No. 12, Los Angeles, July 1, 1993.

3. Moderator, 1994 Annual Ethics Seminar, Federal Bar Association, Los Angeles Chapter, January 29, 1994.

4. Panelist, Fee Arbitrator Training (Beginning), Palm Springs, March 10, 1994.

5. Panelist, Fee Arbitrator Training (Advanced), Palm Springs, March 10, 1994.

6. Panelist, "Fee Agreements & Good Client Relations – The Key to Getting Paid," State Bar Annual Meeting, Monterey, May 15, 1994.

7. Panelist, "The ABC's of Attorney's Fees," Section Education Institute, Monterey, June 2, 1994.

8. Panelist, "Fundamentals of Federal Practice," Los Angeles County Bar Association, November 13 and 14, 1995.

9. Panelist, "The ABC's of Attorney's Fees – The Basics," Section Education Institute, Monterey, May 18, 1996.

10. Panelist, "Beyond the Basics: Advance Issues on Attorney's Fees and Fee Agreements." Section Education Institute, Monterey, May 18, 1996.

11. Panelist, Fee Arbitrator Training, San Diego, July 11, 1996.

12. Panelist, Fee Arbitrator Training, Los Angeles, April 17, 1997.

13. Panelist, "Attorney's Fees: Traps to and Tips for Getting Paid," Section Education Institute, Squaw Valley, May 16, 1997.

14. Panelist, Fee Arbitrator Training, Costa Mesa, June 5, 1997.

15. Panelist, Fee Arbitrator Training, Monterey, July 17, 1997.

16. Panelist, Fee Arbitrator Training, Santa Rosa, August 21, 1997.

17. Panelist, "Your Client Demands Fee Arbitration – Now What?" State Bar Annual Meeting, San Diego, September 12, 1997.

18. Panelist, "Attorney's Fees: Traps to and Tips for Getting Paid," State Bar Annual Meeting, San Diego, September 12, 1997.

19. Panelist, "Attorney's Fees: Traps to and Tips for Getting Paid, Parts 1 and 2," Section Education Institute, San Diego, November 14, 1997.



EXHIBIT _C_

24

20. Panelist, Fee Arbitrator Training, Santa Monica Bar Association, Santa Monica, February 25, 1999.

21. Panelist, Fee Arbitrator Training, LACBA DRS, Los Angeles, June 7, 2000.

22. Panelist, "Rainmaking – Ethical and Practical Marketing," Bar Association of North San Diego County, Vista, February 20, 2003.

23. Panelist, Fee Arbitrator Training, Ventura, March 24, 2003.

24. Panelist, "Winning Fee Agreements," Culver Marina Bar Association, Culver City, April 15, 2003.

25. Panelist, "Ethical, Practical Rainmaker," State Bar Annual Meeting, Anaheim, September 4, 2003.

26. Panelist, "Ethical, Practical Rainmaker," State Bar Annual Meeting, Anaheim, September 5, 2003.

27. Presenter, "Attorneys' Fees – Practically, Ethically," Santa Barbara County Bar Association, Santa Barbara, October 4, 2003.

28. Panelist, "Practical Legal Ethics in California:  Issues and Answers," National Business Institute, Oxnard, October 10, 2003.

29. Panelist, "Conflicts of Interest," Nordman Cormany Hair & Compton LLP, Oxnard, December 2, 2003.

30. Panelist, "Ethical, Practical Rainmaker," Santa Barbara County Bar Association, Santa Barbara, January 28, 2004.

31. Panelist, "Ethical and Practical Issues Involved with Records Retention," Ventura County CPA/Law Society, Ventura, April 30, 2004.

32. Panelist, "Ethical, Practical Rainmaker," State Bar Annual Meeting, Monterey, October 7, 2004.

33. Panelist, "Deposition School," Nordman Cormany Hair & Compton LLP, Oxnard, November 3, 2004.

34. Presenter, "Attorney's Fees," Ventura County Bar Association, Oxnard, Nobember 9, 2004.

35. Presenter, "Attorneys' Fees – Practically, Ethically," Nordman Cormany Hair & Compton LLP, Oxnard, December 1, 2004.

36. Presenter, "Cutting Edge Negotiation Strategies for Lawyers," Nordman Cormany Hair & Compton LLP, Oxfnard, April 6, 2005.

37. Panelist, "Recent Developments in the Law of Attorney's Fees:  Are You Protected," State Bar Annual Meeting, San Diego, September 9, 2005.

38. Panelist, "The Ethical, Practical Rainmaker," State Bar Annual Meeting, San Diego, September 10, 2005.

39. Panelist, Fee Arbitrator Training, Sonoma County Bar Association, September 15, 2005.

40. Panelist, "Elder Abuse," American Inns of Court, Ventura, October 20, 2005.

41. Panelist, Fee Arbitrator Training, Beverly Hills, November 17, 2005.

42. Panelist, Fee Arbitrator Training, Oakland, January 5, 2006.

43. Panelist, "Conflicts of Interest – A Short Course for the Business Litigator," Ventura County Bar Association, Business Litigation Section, January 10, 2006.

44. Presenter, "When a Government Attorney Blows the Whistle – A Tale of Two Lawyers," Tri-County Government Attorneys Association, Santa Barbara, April 20, 2006.

45. Presenter, "Insurance Conflicts," Nordman Cormany Hair & Compton LLP, Oxnard, May 3, 2006.

46. Panelist, "Conflicts of Interest," Nordman Cormany Hair & Compton LLP, Oxnard, June 22, 2006.

47. Panelist, "Injunctions – Winning on the First Serve," Ventura County Bar Association Business Litigation Section, Oxnard, July 11, 2006.

48. Panelist, Fee Arbitrator Training, Los Angeles, July 20, 2006.

49. Panelist, "The Ethical Practical Rainmaker," State Bar Annual Meeting, Monterey, October 5, 2006.

50. Panelist, "Two Dozen (or more) Reasons You May Not Get Paid – And How to Avoid Them: Recent Developments in the Law of Attorney's Fees," State Bar Annual Meeting, Monterey, October 7, 2006.

51. Panelist, "Use and Abuse of Interrogatories," Continuing Education of the Bar, Beverly Hills, October 14, 2006.

52. Panelist, "Mediator Manners II," Ventura County Bar Association ADR and Business Litigation Sections, Ventura, January 24, 2007.

53. Panelist, "CCP Section 998 Offers," American Inns of Court, Ventura, February 8, 2007.

54. Presenter, "Parting is Such Sweet Sorrow – Litigating the Corporate Divorce," Nordman Cormany Hair & Compton LLP, Oxnard, April 30, 2007.

55. Presenter, "Parting is Such Sweet Sorrow – Litigating the Corporate Divorce," Ventura County Bar Association Business Litigation Section, Oxnard, May 8, 2007.

56. Presenter, "Attorneys' Fees – Practically, Ethically," Nordman Cormany Hair & Compton LLP, Oxnard, June 6, 2007.

57. Panelist, Fee Arbitrator Training, Sonoma, September 20, 2007.

09999\9505\NOTES\10362193.DOC

58. Panelist, Fee Arbitrator Training, Napa, September 21, 2007.

59. Panelist, "The Ethical, Practical Rainmaker," State Bar Annual Meeting, Anaheim, September 27, 2007.

60. Panelist, "Lawyers Getting Paid Ethically: Not an Oxymoron," State Bar Annual Meeting, Anaheim, September 28, 2007.

61. Panelist, "Update on Recent Ethics Developments," Nordman Cormany Hair & Compton LLP, Oxnard, January 8, 2008.

62. Panelist, Fee Arbitrator Training, Los Angeles, April 3, 2008.

63. Panelist, Fee Arbitration Administrators Roundtable, Los Angeles, April 4, 2008.

64. Panelist, "It Pays to be Reasonable," Ethics Developments, National Association of Legal Fee Analysis, Los Angeles, June 19, 2008.

65. Panelist, "The Ethical, Practical Rainmaker," State Bar Annual Meeting, Monterey, September 25, 2008.

66. Panelist, "Attorney's Fees: You Put in the Time, But Can You Collect?" – Recent Developments in Attorneys' Fees, State Bar Annual Meeting, Monterey, September 26, 2008.

67. Panelist, Fee Arbitrator Training, Bakersfield, October 15, 2008.

68. Panelist, Fee Arbitrator Training, Santa Monica, November 6, 2008.

69. Presenter, "Attorney's Fees: You Put in the Time, But Can You Collect?" – Recent Developments in Attorneys' Fees, reprise of the State Bar program for the Ventura County Bar Association Business Litigation Section, November 11, 2008.

70. Panelist, "Recent Developments in Business Litigation" – Ventura County Bar Association Business Litigation Section, January 13, 2009.

71. Panelist, "Expert Witness Selection, Preparation and Trial Examination" – American Inns of Court, Ventura, January 15, 2009.

72. Panelist, Fee Arbitrator Training, San Fernando Valley Bar Association, April 29, 2009.

73. Presenter, "Arbitration Procedures and Strategies" – Nordman Cormany Hair & Compton LLP, Oxnard, May 19, 2009.

74. Panelist, "Conflicts, Screening and Waivers: Are You Really Protected?" – Hastings College of the Law Alumni Association, Los Angeles, June 3, 2009.

75. Panelist, "Attorneys Fees – Practically Ethically" – State Bar Annual Meeting, San Diego, September 11, 2009.

76. Panelist, "The Ethical, Practical Rainmaker," State Bar Section Education Institute, Anaheim, [scheduled] March 25, 2010.