UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 05-8881-VBF(AJW)**                    Dated: **January 28, 2010**

Title:     YTY Industry SDN. BHD v. The Dow Chemical Company, et al.

---

PRESENT:   HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

          Rita Sanchez                              None Present
          Courtroom Deputy                          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

      None Present                              None Present

**PROCEEDINGS (IN CHAMBERS):**     **TENTATIVE RULING RE: DEFENDANT THE DOW CHEMICAL COMPANY'S MOTION FOR ATTORNEY'S FEES (dkt. #156)**


**I. Tentative Ruling**

    The Court has received, read, and considered Defendant The Dow Chemical Company's ("Dow") Motion for Attorney's Fees ("Motion") (dkt. #156); Plaintiff YTY Industry SDN. BHD's ("YTY") Opposition (dkt. #168); and Dow's Reply (dkt. #172).

    Dow moves the Court, pursuant to Federal Rules of Civil Procedure 54 and Local Rule 54-12 for an award of attorney's fees in the amount of $3,875,059.91.

    The Court tentatively DENIES the Motion on the grounds that Michigan law applies to the issue of attorney's fees, and under Michigan law, Dow is not entitled to attorney's fees.

**II. Background**

    **A. Factual Background**

---

MINUTES FORM 90                              Initials of Deputy Clerk   rs
CIVIL - GEN

YTY is a corporation based in Malaysia that has engaged in the business of manufacturing disposable gloves since 1988. Findings of Fact and Conclusions of Law ("FFCL") (dkt. #153), Findings of Fact ¶ 1. Dow is a science and technology company that provides chemical, plastic, and agricultural products to a variety of markets. *Id.* ¶ 2. Dow is incorporated in Delaware, and has a principle place of business in Michigan.

Dow developed polyurethane dispersion ("PUD") technology. Among its various uses, Dow's PUD process could be used in the manufacture of disposable, synthetic polyurethane gloves ("PU gloves"). *Id.* ¶ 3.

In January 2001, Dow and YTY entered into a Contract Manufacturing Agreement, whereby Dow would produce the PUD and ship it to YTY, and YTY would manufacture the PU gloves on behalf of Dow using Dow's proprietary technology and ship the gloves to Dow's customers. *Id.* ¶ 5. During the contract manufacturing relationship, Dow manufactured its PUD at a plant in Freeport, Texas. *Id.* ¶ 6. YTY served as Dow's contract manufacturer from January 2001 to March 2003. *Id.* ¶ 13.

In early 2003, Dow decided to sell the PU glove business. *Id.* ¶ 14. Mr. James, Dow's new business development manager in the Pacific, met with YTY representatives Messrs. Wan, Oh, Lim, Moh, and Yap on January 24, 2003 in Kuala Lumpur, Malaysia. *Id.* ¶¶ 10, 17. Following their meeting, four YTY directors signed a written offer to buy the PU glove business from Dow for $6 million. *Id.* ¶ 20. On March 17, 2003, Dow's Board of Directors adopted a resolution approving the sale of the PU glove business to YTY. *Id.* ¶ 31. On March 28, 2003, YTY's Board of Directors held a Board meeting, during which the Board unanimously voted in favor of entering into the contracts for the purchase of the PU glove business. *Id.* ¶ 32.

In connection with the purchase transaction, YTY and Dow executed three separate contracts effective March 28, 2003 regarding the PU glove business: (1) an Asset Acquisition Agreement; (2) a Technology Agreement; and (3) a Sales Contract. *Id.* ¶ 33.

The Asset Acquisition Agreement effectuated Dow's sale of the PU glove business to YTY. *Id.* ¶ 34. The Asset Acquisition Agreement does not have an attorney's fee provision.

Pursuant to the Sales Contract, YTY agreed to purchase 100 percent of its requirements of PUD from Dow, Dow agreed to sell to YTY 100 percent of YTY's requirements for PUD, and Dow could only sell PUD for gloves to YTY for at least 5 years (and up to an additional 5 years if

certain volume thresholds were satisfied).  *Id.* ¶ 35.  The Sales Contract contains an attorney's fees provision in § 2b which states:

> <u>Credit</u> If Customer [YTY] does not pay on time or if Dow for any reason doubts Customer's financial responsibility, then Dow may defer shipments, accelerate the due date on all amounts owed Dow, require cash payments or other security, or cancel this Contract. Customer agrees to pay all of Dow's collection costs including reasonable attorney fees.  Dow may charge the maximum interest allowed by law on all overdue amounts.

*See* Supp. Morrow Decl.(dkt. #158) Ex. 17 at 225.

The Sales Contract also contains a choice-of-law provision that states that Michigan law governs the contract.  *See id*. at 226, Sales Contract § 12(e) ("This Contract will be governed by Michigan law without reference to its principles of conflict of laws.")

**B. Procedural Background**

YTY filed its Complaint against Defendant on December 22, 2005 (dkt. #1) and its First Amended Complaint ("FAC") on May 8, 2007 (dkt. #26) based on YTY's acquisition of Dow's PU glove business.  YTY's First Amended Complaint alleged ten causes of action: fraud and deceit; fraudulent concealment/ non-disclosure; negligent misrepresentation; breach of fiduciary duty;  constructive fraud; innocent misrepresentation; breach of contract; breach of the implied covenant of good faith and fair dealing; promissory estoppel; and in the alternative, rescission.

On July 2, 2007, the Court granted Dow's Motion to Dismiss YTY's claims for breach of fiduciary duty and constructive fraud, on the ground that no fiduciary relationship existed between the parties (dkt. #33).  *See also* FFCL, Conclusion of Law ¶ 65.

On August 29, 2008, the Court granted in part and denied in part Dow's Motion for Summary Judgment (the "MSJ Order") (dkt. #77). In its MSJ Order, the Court dismissed the following claims from YTY's First Amended Complaint: fraudulent concealment/non-disclosure; innocent misrepresentation; breach of contract; breach of the implied covenant of good faith and fair dealing; and promissory estoppel.  The Court concluded that Dow's conduct in increasing the price of PUD and ultimately terminating the Sales Contract were authorized by the express provisions of the Sales Contract.  See FFCL, Conclusion of Law ¶ 66.

On October 29, 2009, the Court, following a bench trial, entered final judgment in this action in favor of Dow on all remaining claims. *See* Final Judgment (dkt. #155).

On November 12, 2009, Dow filed its Motion for Attorney's Fees (dkt. #156). This case was transferred from Judge Larson to this Court, and the Court set the hearing on this Motion for February 1, 2010 (dkt. #179).

**III. Analysis**

   **A. Michigan Law Governs**

The Court finds that Michigan law is the applicable law in determining Dow's request for attorney's fees.

As this is a diversity action, the Court applies California's choice of law rules. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001). "A separate choice-of-law inquiry must be made with respect to each issue in a case." *S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981).

Where the parties have chosen a foreign state's law through their contract, California courts analyze the choice of law issue by applying Section 187 of the Restatement Second of Conflict of Laws ("Section 187" or "Restatement section 187"). *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992). Restatement section 187 "reflects a strong policy favoring enforcement" of choice-of-law provisions. *Id.* at 465.

Under Restatement section 187, the Court must first determine "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Id.*

If either of these requirements is met, then the Court must next determine: (1) in the absence of a choice-of-law provision, which state would provide the applicable law under Restatement section 188; (2) "whether the chosen state's law [in the contract] is contrary to a *fundamental* policy" of the state under Restatement section 188; and (3) whether the state under Restatement section 188 has a "materially greater interest than the chosen state in the determination of the particular issue." *Id.* at 465-67.

The Parties do not dispute that Michigan has a substantial relationship to the parties or their transaction, as Dow is headquartered

in Michigan.  *See* Mot. at 7:18-8:7; Opp. at 7:2-5.  *See also ABF Capital Corp. v. Grove Props. Co.*, 126 Cal. App. 4th 204, 217 (Ct. App. 2005) (finding that a "substantial relationship" exists when one party has its principal place of business in that state).  Therefore, the Court must analyze the remaining three factors under Restatement section 187.

### 1. In the Absence of a Choice-of-Law Provision, California Law Would Not Provide the Applicable Law under Restatement Section 188

Under Restatement section 188, the Court considers the following factors: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.  These contacts are to be evaluated according to their relative importance with respect to the particular issue."  Restatement § 188(2); *Grove Props.*, 126 Cal. App. 4th at 221-22.

The evidence shows that the place of performance and location of subject matter of the contract was Texas and Malaysia.  PUD was manufactured in Texas (FFCL ¶ 6), and the PU gloves were manufactured by YTY in Malaysia (*id.* ¶ 1).  The Parties do not dispute that the domicile, residence, nationality, place of incorporation, and place of business of the parties are Michigan, Delaware, and Malaysia: Dow is a Delaware corporation with a principle place of business in Michigan, while YTY is a Malaysian corporation with its principle place of business in Malaysia.  *See* Mot. at 12:21-23; Opp. at 10:4.

The Parties, however, dispute the place of contracting and place of negotiation.  The Court finds that Malaysia is the place of contracting since the "last act" to give the contract a binding effect was in Malaysia.  *See Grove Prop.*, 126 Cal. App. 4th at 814-15.  A signing ceremony of the contracts was held in Malaysia.  *See* Morrow Decl. Ex. 26 at 20.  Mr. Oh signed the contracts on behalf of YTY in Malaysia (Morrow Decl. Ex. 17 at 195, 219, 226), and Stephen James signed in the name of Robert Wood on behalf of Dow in Malaysia.  *Id.*

The evidence also supports finding that Malaysia and Michigan are the places of negotiation for the contract.  For example, Stephen James of Dow met with YTY's directors in Malaysia to discuss the purchase of the PU glove business (FFCL ¶ 17); Mr. James was based in Asia (*id.* ¶ 10); YTY's directors issued their offer letter for the PU glove business and subsequent letter of intent from Malaysia (Supp. Morrow Decl. Exs. 23, 24, pp. 8-15; FFCL ¶ 20); the parties' second negotiation session occurred in Malaysia (FFCL ¶ 22); and any notices to Dow under the Sales

Contract were to be sent to Stephen James at a Michigan address (*see* Morrow Decl. Ex. 17 at 224).  Also, on January 24, 2003, YTY addressed its offer letter regarding the PU glove business to Mr. McDaniel in Michigan.  *See* Supp. Morrow Decl. Ex. 23. In light of this analysis, the Court finds that either Michigan or Malaysian law, and not California law, would apply if there were no choice-of-law provision in the Sales Contract under Restatement section 188.

None of the Section 188 factors favors California.  This is not disputed.  While Dow contends that the arguments that YTY made when it sought to retain venue in California also are relevant here (such as the high percentage of YTY's customer based in California; the importation of gloves into the U.S. through California; that Dow maintains offices in California), Dow does not provide legal authority for this contention.  In any event, these venue factors are not dispositive in analyzing Restatement section 188 factors.

Furthermore, while Dow argues that the Court previously found that California law was applicable in its ruling on Dow's summary judgment motion (dkt. #177), that determination is not applicable to this issue.  In ruling on Dow's Motion for Summary Judgment, the Court found that California law applied for *tort* claims because YTY did not give a reason why "the Court should not follow the *general rule* which is that the law of the forum state governs tort claims filed in that forum."  *See* Aug. 29, 2008 Order (dkt. #77) at 19 (emphasis added).  As a side note, the Court applied Michigan law for contract claims.  *See id.* at 11-18.

Lastly, Dow argues that given the procedural nature of the attorney's fee issue, the fact that the case is venued in California is given great weight, relying on *Grove Properties*, 126 Cal. App. 4th at 222-23, and *Ribbens Int'l, S.A. de CV v. Transport Int'l Pool, Inc.*, 47 F. Supp. 2d 1117 (C.D. Cal. 1999).  However, in both *Grove Properties* and *Ribbens*, the courts initially found that factors under Section 188 favored California.  *See* Opp. at 10:18-11:8.  Here, none of the Section 188 factors favors California.  Therefore, California law does not apply.

### 2. Even if California Law were to Apply, Michigan Law is not Contrary to a Fundamental Policy of California

Even if the Court were to find that California is the law that would govern this attorney's fee issue in the absence of a choice-of-law provision under Section 188, the Court still applies Michigan law because Dow does not show that Michigan law is contrary to a fundamental policy of California.

MINUTES FORM 90                                 Initials of Deputy Clerk    rs
CIVIL - GEN

Here, Dow seeks attorney's fees through Section 2(b) of the Sales Contract,[1] which provides for attorney's fees to Dow for any collection of costs from YTY.  Dow seeks to apply this fees provision in collections cases to the entire Sales Contract, relying on the second paragraph of California Civil Code section 1717(a) which states: "Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract."  Dow, however, does not provide sufficient legal authority showing that this is a fundamental policy of California.

Additionally, YTY makes a significant argument that even though the Sales Contract does not expressly state that the parties were represented by counsel, as required by Section 1717, that since the Parties were actually represented by counsel, the policy concerns behind Section 1717 are not violated in this case. The Court previously found that YTY was represented by counsel (FFCL ¶ 30), and Dow also states that the Sales Contract was prepared by an attorney (Supp. Morrow Decl. ¶ 2).

**3. Even if California Law Were to Apply, California Does Not Have a Materially Greater Interest than Michigan in the Determination of Attorney's Fees**

Dow does not meet its burden of showing that even if California law were to apply under Restatement section 188, that California has a materially greater interest than Michigan in the determination of attorney's fees.  Although California courts have previously found that California has a greater material interest in "enforcing the equitable rules governing access to its court" than upholding the policy of other states in ensuring enforcement of its laws, those cases involved parties who were California residents or citizens, or where California had a significant interest in the subject agreements or underlying transactions.  *See Grove Props.*, 126 Cal. App. 4th at 220; *Ribbens*, 47 F. Supp. 2d at 1123.[2]

---

[1] Section 2(b) of the Sales Contract states: <u>Credit</u> If Customer [YTY] does not pay on time or if Dow for any reason doubts Customer's financial responsibility, then Dow may defer shipments, accelerate the due date on all amounts owed Dow, require cash payments or other security, or cancel this Contract.  Customer agrees to pay all of Dow's collection costs including reasonable attorney fees.  Dow may charge the maximum interest allowed by law on all overdue amounts. *See* Supp. Morrow Decl. Ex. 17 at 225.

[2] Dow also cites to *Kim v. Hayes*, No. G037317, 2007 WL 1566713, at *6 (Ct. App. May 31, 2007), an unpublished case, but in *Kim,* the court did not analyze Section 188 factors, and also the non-prevailing party did not address what

MINUTES FORM 90                                  Initials of Deputy Clerk    rs
CIVIL - GEN

Additionally, Michigan has an interest in ensuring that its rules regarding contractual provisions for attorney's fees apply to its corporate citizen. *See*, *e.g.*, *S.A. Empresa*, 641 F.2d at 753; *ABF Capital Corp. v. Berglass*, 130 Cal. App. 4th 825, 839 (Ct. App. 2005); *Ribbens*, 47 F. Supp. 2d. at 1123.

In sum, Dow does not adequately show that California has a materially greater interest than Michigan in the determination of fees.

**B. Dow is Not Entitled to Attorney's Fees Under Michigan Law**

The Court applies Michigan law to the attorney's fee issue. Applying Michigan law, the Court finds that Dow is not entitled to attorney's fees under the Sales Contract, and its Motion is therefore denied. As Michigan law narrowly construes contractual attorney's fees provisions, and this case does not involve issues regarding collections, Dow does not show that it is entitled to attorney's fees under Michigan law. *See Grace v. Grace*, 253 Mich. App. 357, 370-71 (2002); *Rinaldi v. Rinaldi*, 122 Mich. App. 391, 402 (1983).

In light of this ruling, the Court does not need to address the other issues raised by Dow in its Motion, including whether Dow is entitled to fees under Cal. Civil Code section 1717, and the amount of fees it should be awarded.

---

interest Michigan would have in enforcing its law concerning attorney fees in a foreign court. This case is therefore distinguishable.

MINUTES FORM 90                                           Initials of Deputy Clerk   rs
CIVIL - GEN